# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NISJET LAPI,<br><br>   Plaintiff,<br><br> v.<br><br>TETRAPHASE PHARMACEUTICALS, INC., L. PATRICK GAGE, GAREN BOHLIN, STEVEN BOYD, JEFFREY A. CHODAKEWITZ, JOHN G. FREUND, GERRI HENWOOD, GUY MACDONALD, KEITH MAHER, and NANCY J. WYSENSKI,<br><br>   Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Nisjet Lapi ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Tetraphase Pharmaceuticals, Inc. ("Tetraphase" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Tetraphase and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against Tetraphase and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to AcelRx Pharmaceuticals, Inc. ("AcelRx") (the "Proposed Transaction").

2. On March 15, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with AcelRx. Pursuant to the terms of the Merger Agreement, each share of Tetraphase common stock issued and outstanding immediately prior to the effective time of the merger will, other than excluded shares. be converted into the right to receive, (1) a number of shares of AcelRx's common stock, par value $0.001 per share, equal to 0.6303, and (2) one contingent value right per share (a "CVR") representing the right to receive up to $12.5 million (payable in cash or shares of AcelRx's common stock, at AcelRx's election), subject to the achievement of net sales milestones.

3. On April 24, 2020, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Tetraphase and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tetraphase shareholders before the vote on the Proposed Transaction or, in the event the

Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.  This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.  Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  In addition, the Company's stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

8.  Plaintiff is, and has been at all times relevant hereto, a common shareholder of Tetraphase.

9.  Defendant Tetraphase is incorporated under the laws of the Delaware, with its principle executive offices located at 480 Arsenal Way, Watertown, Massachusetts 02472.  The Company's common stock trades on the NASDAQ under the symbol "TTPH."

10. Defendant L. Patrick Gage ("Gage") is and has been the Chairman of the Company's Board at all times during the relevant time period.

11. Defendant Garen Bohlin ("Bohlin") is and has been a director of Tetraphase at all times during the relevant time period.

12. Defendant Steven Boyd ("Boyd") is and has been a director of Tetraphase at all times during the relevant time period.

13. Defendant Jeffrey A. Chodakewitz ("Chodakewitz") is and has been a director of Tetraphase at all times during the relevant time period.

14. Defendant Gerri Henwood ("Henwood") is and has been a director of Tetraphase at all times during the relevant time period.

15. Defendant Guy Macdonald ("Macdonald") is and has been a director of Tetraphase at all times during the relevant time period.

16. Defendant Keith Maher ("Maher") is and has been a director of Tetraphase at all times during the relevant time period.

17. Defendant Nancy J. Wysenski ("Wysenski") is and has been a director of Tetraphase at all times during the relevant time period.

18. Defendants Gage, Bohlin, Boyd, Chodakewitz, Henwood, Macdonald, Maher, and Wysenski are collectively referred to herein as the "Individual Defendants."

19. The Individual Defendants, along with Defendant Tetraphase, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20. Tetraphase is a biopharmaceutical company specializing in the development and commercialization of novel tetracyclines for serious and life-threatening conditions, including bacterial infections caused by many multidrug-resistant ("MDR"), bacteria.

21. The company's commercial product, XERAVA™ (eravacycline), a fully synthetic fluorocycline, is an intravenous ("IV") antibiotic that is approved for use as a first-line empiric monotherapy for the treatment of MDR infections, including those found in complicated intra-abdominal infections. The Tetraphase pipeline also includes TP-271 IV and Oral, and TP-6076 IV only, which are Phase 2 ready, and TP-2846, which is in preclinical testing for acute myeloid leukemia.

### The Company Announces the Proposed Transaction

22. On March 16, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> WATERTOWN, Mass.--(BUSINESS WIRE)--Tetraphase Pharmaceuticals, Inc. (Nasdaq: TTPH), a biopharmaceutical company focused on commercializing its novel tetracycline XERAVA to treat serious and life-threatening infections, today announced the execution of a definitive merger agreement pursuant to which AcelRx Pharmaceuticals (Nasdaq: ACRX) would acquire Tetraphase in a stock for stock transaction. Under the terms of the agreement, Tetraphase stockholders will receive, for each share of Tetraphase common stock, 0.6303 of a share of AcelRx common stock, valued at approximately $14.4 million as of the close of trading on March 13, 2020, and one contingent value right (CVR), which would entitle the holders to receive aggregate payments of up to $12.5 million for the achievement of future XERAVA™ net sales milestones starting in 2021. The transaction was unanimously approved by both the AcelRx and Tetraphase boards of directors and is expected to close in the second quarter of 2020. Select Tetraphase stockholders and warrant holders, including Armistice Capital, LLC, holding in the aggregate approximately 31% of Tetraphase's outstanding common stock, have signed voting agreements in favor of the transaction.

Concurrently with signing the merger agreement, Tetraphase and AcelRx entered into a co-promotion agreement to market and promote XERAVA™ for the treatment of complicated intra-abdominal infections (cIAI) and DSUVIA® for the treatment of acute pain in medically supervised settings. The co-promotion agreement will allow the AcelRx and Tetraphase teams to benefit immediately from the promotion of multiple products, leverage each company's customer relationships, and create efficiencies among commercial teams. The combined sales team will cover in excess of 70% of each company's originally targeted hospitals.

"This transaction is an important move forward for Tetraphase and more importantly, for XERAVA and the patients who need this treatment," said Larry Edwards, President and Chief Executive Officer of Tetraphase. "We are excited to collaborate with AcelRx, a partner whose strategic goals complement our own. We continue to believe that XERAVA is a key addition to the hospital anti-infective armamentarium, and believe that together with AcelRx we will be able to more effectively bring new treatments to patients in healthcare institutions."

"We are excited to have reached agreement with Tetraphase, a company with a well-established U.S. salesforce and a high-growth hospital product that complements AcelRx's commercial strategy," said Vince Angotti, Chief Executive Officer of AcelRx. "This transaction highlights our focus on efficiently commercializing DSUVIA with a salesforce promoting multiple products and is the first step in our plan to create a growth platform to further consolidate hospital-focused pharmaceutical companies and products. We look forward to integrating XERAVA and the existing Tetraphase commercial infrastructure with our own as we strengthen our position on promoting innovative products to healthcare institutions allowing patients access to new and improved treatments."

Based on the closing price of AcelRx stock on March 13, 2020, the stock consideration to be received by Tetraphase equityholders is valued at approximately $14.4 million, with approximately $7.4 million of this amount allocated to the Company's outstanding common stock warrants. In the merger, Tetraphase stockholders would also be entitled to receive, for each share of Tetraphase common stock, one non-tradeable CVR, the holders of which will be entitled to receive payments of up to an additional $12.5 million in the aggregate upon the achievement of net sales of XERAVA™ in the United States of at least (i) $20 million during 2021, (ii) $35 million during any year ending on or before December 31, 2024 and (iii) $55 million during any year ending on or before December 31, 2024. The total cost synergy expectation from the combined company exceeds 90% of the Tetraphase operating expenses and are expected to be fully realized in 2021.

Closing of the transaction is subject to specified closing conditions, including Tetraphase having a minimum amount of net cash as of the closing and approval by Tetraphase stockholders. Upon the closing of the transaction, Tetraphase will

become a privately held company and shares of Tetraphase's common stock will no longer be listed on any public market. Subject to certain limited exceptions, the CVRs will be non-transferable.

Janney Montgomery Scott is acting as financial advisor to Tetraphase and has rendered a fairness opinion to Tetraphase's board of directors in connection with the transaction. Wilmer Cutler Pickering Hale and Dorr LLP is acting as legal advisor to Tetraphase in connection with the transaction.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23. On April 24, 2020, the Company authorized the filing of the Proxy Statement with the SEC. The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Management's Financial Projections

25. The Proxy Statement contains projections prepared by AcelRx and the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections. Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial

measures that demonstrate the SEC's tightening policy. One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27. In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28. Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, (i) Unlevered Free Cash Flow; and (ii) EBIT.

29. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Janney's Financial Opinion

30. The Proxy Statement contains the financial analyses and opinion of Janney Montgomery Scott ("Janney") concerning the Proposed Transaction, but fails to provide material information concerning such.

31. With respect to Janney's *Standalone Discounted Cash Flow Analysis* of Tetraphase, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the application of exit multiples of 2.25x to 2.75x to derive terminal values; and (ii) the inputs and assumptions underlying Janney's selection of discount rates ranging from 17.6% to 21.6%.

32. With respect to Janney's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Janney in its analysis.

8

33. With respect to Janney's *Premiums Paid Analysis*, the Proxy Statement fails to disclose the transactions observed by Janney in its analysis as well as the premiums paid in each of those transactions.

34. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

35. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Sales Process**

36. Finally, the Proxy Statement fails to disclose material information concerning the process leading up to the Proposed Transaction. An accurate and complete description of the process the Board used in entering into the Proposed Transaction is indeed material to the Company's shareholders, as it is vital information to determine whether or not to vote in favor of the Proposed Transaction.

37. The Solicitation Statement notes that the Company executed confidentiality agreements with other potential parties that may be interested in a potential acquisition of the Company. However, the Solicitation Statement fails to disclose whether any of those potential

parties ultimately entered into any mutual non-disclosure agreements with the Company that may contain "don't ask, don't waive" ("DADW") provisions that would prevent the potential suitor from making a topping bid for the Company.  This information is material to shareholders in deciding whether to vote in favor of the Proposed Transaction, as it would show whether or not a superior offer for the Company was available.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Potential Conflicts of Interest

38. The Proxy Statement omits material information concerning potential conflicts of interest involving the Company's undisclosed additional financial advisors.

39. For instance, the Proxy Statement notes that the Company' engaged other financial advisors in connection with the Proposed Transaction, but fails to disclose: (i) the identities of such advisors; (ii) what fees were paid in connection with any services rendered; and (iii) the detailes regarding what services were provided to the Company or any other parties to the Proposed Transaction.

40. Full disclosure of this information is material to the Company's shareholders in order for them to make a fully informed decision upon voting.

### COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

45. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

46. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading.

The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

47. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48. The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

49. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of Tetraphase within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tetraphase, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 4, 2020

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*